## JACQUELINE ANDERSON-MOLE *vs.* UNIVERSITY OF MASSACHUSETTS & others.[1]

No. 98-P-1706.

Worcester. April 5, 2000. - July 26, 2000.

Present: KASS, SMITH, & JACOBS, JJ.

*Jury and Jurors. Practice, Civil,* Challenge of jurors, Waiver. *Waiver.*

The plaintiff at a civil trial waived her objections to the composition of the jury and could not later base an appeal on that issue, which had apparently been resolved by the trial judge to the plaintiff's satisfaction. [725-726]

CIVIL ACTION commenced in the Superior Court Department on November 4, 1992.

The case was tried before *James P. Donohue,* J.

*Harvey A. Schwartz* for the plaintiff.

*Deidre Heatwole* for the defendants.

KASS, J. During jury selection, the Superior Court judge suspected that counsel for the defendants was using peremptory challenges to remove women from the jury. The judge restored to the jury two of the women whom the defense had challenged, and both sides thereafter announced themselves content with the jury's makeup. After five days of trial, the jury returned verdicts for all defendants. The plaintiff now urges as her sole ground on appeal that the jury was unconstitutionally purged of women. We decide that the plaintiff waived unspoken objections, if any, that she had to the composition of the jury, and we affirm the judgments. The nature of the case on trial was an action claiming unlawful discharge by the University of Massachusetts Medical School in retaliation for the plaintiff having made a complaint that her department chairmen had created a sexually hostile working environment. See G. L. c. 151B, § 4(4).

[1]University of Massachusetts Medical School, Frank Chlapowski, and Michael Czech.

In the recent case of *Commonwealth* v. *Rodriguez*, 431 Mass. 804, 807-811 (2000), the court reviewed in some detail and brought current the law, first announced in *Commonwealth* v. *Soares*, 377 Mass. 461, 488, cert. denied, 444 U.S. 881 (1979), that governs the prohibition against the use of peremptory challenges to exclude members of discrete groups from juries solely on the basis of that group membership. Gender is such a discrete group. *Commonwealth* v. *LeClair*, 429 Mass. 313, 319 (1999). We need not cover all the ground of the *Rodriguez* opinion. By way of summary, after the judge recognizes a prima facie pattern of group exclusion, the burden shifts to the party exercising the peremptory challenge to provide a legitimate reason for that challenge, one that is personal to the juror rather than based on the juror's group affiliation. The judge then makes a finding whether the challenge was legitimate or a pretext for group exclusion. See *Commonwealth* v. *Rodriguez*, 431 Mass. at 808-809, and cases cited. Civil litigants, as well as parties in criminal cases, are entitled to a jury that has not been unfairly skewed. *J.E.B.* v. *Alabama ex rel. T.B.*, 511 U.S. 127, 128 (1994). See *Edmonson* v. *Leesville Concrete Co.*, 500 U.S. 614, 627-628 (1991). Cf. *Terrio* v. *McDonough*, 16 Mass. App. Ct. 163, 170-171 (1983).

1. *The jury impanelment.* In the instant case, there were fifty-five persons on the venire when jury selection began: thirty-four men and twenty-one women. Of those fifty-five, the judge determined that twenty-eight stood indifferent: twenty-one men and seven women. Ten men and four women were then seated.

The plaintiff exercised seven peremptory challenges, six against men and one against a woman. Five men and two women replaced the jurors who had been challenged. The plaintiff then challenged one of the male replacements, and a woman took his place. Now the jury stood at eight men and six women and the plaintiff pronounced herself content. When defense counsel made her peremptory challenges, they were directed against five of the women who had been seated in the jury box. The judge's antennae went up; he called defense counsel to the side bar and asked her why she had challenged "every woman on the jury."[2] Defense counsel protested, "My reasons had nothing to do with gender, nothing."

Defense counsel explained that the first two jurors she had

---

[2]Actually, counsel had left unchallenged one woman juror.

challenged worked at nearby colleges and might not put aside policies and procedures they had become familiar with which differ from those of the University of Massachusetts. As to the third juror that she had struck, defense counsel explained that the juror was unsatisfactory because she was a housewife. The fourth struck was unsatisfactory because she worked, and the fifth because she worked in an industry that was prone to complaints of sexual harassment. Counsel for the plaintiff remarked: "[T]hey don't want women who work in similar jobs, they don't want women who work in different jobs, they don't want women who don't work at all. What's left?" The trial judge agreed. "Well," he said, "it appears to me you're knocking off all the women. That's what you're trying to do." The judge decided, however, to let the challenges stand until the remainder of the impanelment played out. The five challenged women were replaced by five men and the jury then stood at thirteen men and one woman.

At that point in the impanelment process, plaintiff's counsel requested a mistrial. The judge expressed his displeasure with the last round of challenges. Defense counsel again protested that her motives were pure. The judge said he was prepared to accept the first three challenges by the defense[3] but was bothered by the last two, and that he thought it was clear what defense counsel was trying to do. At that point, defense counsel said:

> "Put them back on if that is going to create some issue on appeal that is worrisome to Your Honor. Let them back on . . . ."

Plaintiff's counsel said, "I would prefer to put them back." The two prospective women jurors were identified and reseated, replacing the last two men chosen from the venire. The judge asked, "Is that everything now?" to which plaintiff's counsel responded, "The plaintiff is content." The defendants also pronounced themselves satisfied. The jurors — eleven men and three women — were sworn, and the trial proceeded.

2. *Discussion.* This is not a case like *Commonwealth* v. *Fruchtman,* 418 Mass. 8, 12 & n.7, cert. denied, 513 U.S. 951 (1994), in which the defense claimed it had been denied peremp-

---

[3]At an earlier stage of the proceedings the judge had remarked as to the third juror challenged by the defense, "I don't buy the reason you're giving me."

tory challenges, made objections to those denials at trial, but declared itself content with a jury ultimately chosen. The objection, having been lodged, was not lost. The defense could be read as content, but under protest, much as a party who makes an unsuccessful request for a jury instruction need not announce further objection to the judge's failure to give the desired instruction. See *Commonwealth* v. *Biancardi,* 421 Mass. 251, 254 (1995). Here, the judge, when he said he was putting two of the five challenged jurors back, also asked, "Is that everything now?" If the plaintiff objected to all or any of the other three challenges of women, that was the time to say so. Instead, plaintiff's counsel responded, "The plaintiff is content." Cf. *Caldwell* v. *Maloney,* 159 F.3d 639, 647 (1st Cir. 1998), cert. denied, 526 U.S. 1009 (1999) (both parties declared themselves content, but before the jury were sworn, the defendant restated his objection that all persons of color on the venire had been peremptorily challenged).

An objection to any aspect of how a judge conducts a trial must be made sufficiently timely so that the judge can reflect upon the objection and correct a mistake. Rule 46 of the Massachusetts Rules of Civil Procedure, 365 Mass. 811 (1974), embodies this principle in civil cases. The rule dispenses with formal objections to rulings but requires "that a party, at the time the ruling or order of the court is made or sought, make[] known to the court the action which he desires the court to take or his objection to the action of the court and his grounds therefor . . . ." The trial judge in this case had broad discretion in diagnosing and remedying the efforts of a party to exclude women from the jury. See *Commonwealth* v. *Odell,* 34 Mass. App. Ct. 100, 101-102 (1993). If the plaintiff had an objection to the composition of the jury, she waived it by unmistakably letting the judge understand that he had remedied the defendants' attempt to purge the jury of women. She led the judge and the jurors into a five-day trial. She may not now base an appeal on objection to the composition of the jury, an issue that had been raised and resolved to the plaintiff's apparent satisfaction.[4] Parenthetically, the trial judge dealt appropriately with the selection of the jury.

*Judgments affirmed.*

---

[4]At the time plaintiff's counsel expressed himself content with the jury, he still had several peremptory challenges to burn.