## School Committee of Westport *vs.* Anthony Coelho & others.[1]

No. 96-P-189.

Bristol. December 8, 1997. - April 16, 1998.

Present: Porada, Smith, & Flannery, JJ.

*School and School Committee,* Arbitration, Termination of employment. *Arbitration,* School committee, Enjoining arbitration. *Statute,* Construction. *Labor,* Arbitration.

A Superior Court judge correctly concluded that plaintiff teachers, who had been terminated from their employment due to budgetary reasons, were not entitled to arbitration under the Education Reform Act of 1993, St. 1993, c. 71, where the plain language of the act precludes the application of its arbitration provisions to such budget-induced layoffs. [617-619]

Civil action commenced in the Superior Court Department on October 3, 1994.

The case was reported by *Walter E. Steele,* J., on a statement of agreed facts.

*Harold F. Kowal* for the plaintiff.

*Joseph I. Macy* for Anthony Coelho & another.

*Pierce O. Cray,* Assistant Attorney General, for the Commissioner of Education.

Smith, J. On June 18, 1993, the Governor signed into law the Education Reform Act of 1993, St. 1993, c. 71 (Act). Among other things, the Act substantially rewrote G. L. c. 71, § 42, and established an exclusive arbitration procedure under the auspices of the Commissioner of Education (commissioner) for those teachers terminated for "just cause." G. L. c. 71, § 42, as amended by St. 1993, c. 71, § 44.[2]

---

[1]Marcel Marchand and the Commissioner of Education. Coelho and Marchand also filed a cross claim against the Commissioner of Education.

[2]The Act contained an emergency preamble, making it effective as of June 18, 1993.

The defendants, Marcel Marchand and Anthony Coelho (teachers), requested that the commissioner commence arbitration proceedings pursuant to G. L. c. 71, § 42, as amended by St. 1993, c. 71, § 44, concerning their August, 1993, layoffs by the Westport school superintendent.

On October 3, 1994, the Westport school committee (committee) filed a complaint in the Superior Court against the teachers and the commissioner seeking a declaration that the teachers could not proceed with the requested arbitration hearing under the Act because they had previously requested arbitration under the collective bargaining agreement, the arbitration hearing had been held, and the arbitrator had ruled in favor of the committee. The committee also filed a motion for a temporary restraining order requesting that the commissioner be restrained from proceeding with arbitration under the Act. A Superior Court judge allowed the restraining order and subsequent orders have kept the stay in effect.

The parties filed a joint motion along with a statement of agreed material facts, requesting that a Superior Court judge report the case to this court for determination. G. L. c. 231, § 111, third par. Mass.R.Civ.P. 64, 365 Mass. 831-832 (1974) ("The court, upon request of the parties, in any case where the parties agree in writing as to all the material facts, may report the case to the Appeals Court for determination without making any decision thereon"). A Superior Court judge allowed the motion.

We summarize the facts from the parties' statement of agreed material facts. The teachers were tenured teachers[3] in the Westport school system. On June 8, 1993, both teachers received written notices from the committee that their teaching positions had been eliminated for the 1993-1994 school year as a result of budgetary reductions and a realignment of curriculum programs. On June 22, 1993, the committee voted to eliminate the teachers' positions and to terminate their employment.

Later, it was brought to the committee's attention that prior to its June 22, 1993, vote, the Governor had signed the Act and that the new statute, among other things, "shifted primary responsibility for hiring, disciplining, and terminating teachers

---

[3]General Laws c. 71, § 41, as amended by St. 1993, c. 71, § 43, replaced the statutory concept of "tenure" with that of "professional teacher status." Here, the teachers had served in the school district for more than three years. Therefore, they had attained professional teacher status.

and administrative personnel from the local school committees to school principals, subject to the supervision and direction of the local school superintendents." *Higher Educ. Coordinating Council* v. *Massachusetts Teachers' Assn.*, 423 Mass. 23, 29 n.6 (1996). After reviewing the Act, the committee decided that in regard to the teachers, the layoff process should be started again. Therefore, on August 16, 1993, the superintendent of schools sent the teachers new layoff notices. The notices stated that the reason for the layoffs was because "[t]here has been a reorganization of our High School curriculum offerings as a result of budgetary reasons and declining enrollment."

The teachers were members of the Westport Federation of Teachers, Local 1906 (union) at the time of their layoffs. Prior to the layoffs, the committee and the union had entered into a collective bargaining agreement (agreement) which remained in effect at all times relevant to this action. The agreement contained grievance and arbitration procedures which allowed teachers in the Westport system to seek final and binding arbitration in regard to the propriety of layoffs.

The union filed a grievance under the agreement, challenging the layoffs. The teachers' grievances were denied by the committee, and on August 27, 1993, the union, under the provisions of the agreement, filed a demand for arbitration with the American Arbitration Association (AAA). The demand stated that the nature of the dispute was that the committee had "dismissed and/or laid off [the teachers] in violation of the parties' collective bargaining agreement."

The AAA responded to the union's demand for arbitration; an arbitrator was agreed upon by the parties and a hearing was held regarding the validity of the layoffs of the teachers. Noting that the teachers' "layoffs were occasioned by a $250,000 reduction made by the Annual Town Meeting in the School Department budget for the 1993-1994 school year," the arbitrator specifically found that "limited funding was the justification for the curriculum revisions which resulted in the elimination of the positions." Because both curriculum revisions and limited funding constituted grounds for layoffs under the agreement, the arbitrator ruled that the committee had not violated the agreement. Neither side appealed the arbitrator's decision.[4]

After the arbitrator's decision, the teachers retained their own

---

[4]The parties stipulated that one of the issues to be arbitrated was whether, in light of the arbitration procedures contained in the Act, the teachers' griev-

attorney, and requested that the commissioner commence arbitration proceedings pursuant to the Act. G. L. c. 71, § 42, as amended by St. 1993, c. 71, § 44. In response to the teachers' request, the commissioner sent a list of three arbitrators to the committee and the teachers; the teachers and the committee selected arbitrators for each teacher's appeal and those arbitrators set hearing dates. Thereafter, the committee filed its complaint in this action.

The teachers raise alternate grounds to challenge the committee's claim that they are not entitled to another arbitration hearing. They argue that the arbitration procedures in the Act are unconstitutional because the procedures deny them due process and also violate art. 15 of the Massachusetts Declaration of Rights (right to jury trial). Alternatively, they contend that if we hold that the arbitration procedures are constitutional, they are entitled to another arbitration hearing. The commissioner, however, argues, among other things, that the arbitration procedures for teacher dismissals set forth in the Act do not apply to the teachers because they were laid off as a result of budgetary constraints rather than dismissed for performance-based reasons. The commissioner also asserts that the Act has a transitional section, not codified in the General Laws, that states that the provisions of § 42 do not apply to employees subject to collective bargaining agreements executed, as the agreement was here, prior to the effective date of the Act.[5] See St. 1993, c. 71, § 77.

Upon reviewing the Act in light of the record before us, we think that it is not necessary for us to resolve the constitutional questions raised by the teachers because we agree with the commissioner that the arbitration procedures in the Act are not applicable to the teachers' dismissal.

ances should be arbitrated under the grievance and arbitration procedures contained in the agreement or whether there must be arbitration under the auspices of the commissioner. The union took the position that the procedures contained in the agreement controlled because the Act's procedure only applied to situations involving termination for "just cause." The arbitrator agreed with the union.

[5]The commissioner also argues that the teachers are judicially estopped from contending that G. L. c. 71, § 42, as amended, applies to them where they successfully argued before the arbitrator, under the agreement, that the statute did not apply to them. Because we hold that the statute does not apply to the teachers, we do not address this portion of the commissioner's argument.

It is clear from the statement of agreed material facts (and from the arbitrator's decision) that the teachers were laid off for budgetary reasons caused by declining enrollment.[6] The Act, in regard to rights and procedures for dismissed teachers, makes a clear distinction between performance-based dismissals and budget-induced layoffs. It states that a teacher who has attained professional teacher status cannot be dismissed "except for inefficiency, incompetency, incapacity, conduct unbecoming a teacher, insubordination or failure on the part of the teacher to satisfy teacher performance standards developed pursuant to [G. L. c. 71, § 38] . . . or other just cause." G. L. c. 71, § 42, third par., as amended. The statute then outlines an extensive and exclusive arbitration procedure for those types of performance-based dismissals, including stating that such arbitration is held under the auspices of the commissioner. See G. L. c. 71, § 42, fourth par., as amended.

However, in regard to budget-induced layoffs, the Act states that § 42, as amended, "shall [not] affect the right of a superintendent to lay off teachers pursuant to reductions in force or reorganization resulting from declining enrollment or other budgetary reasons." G. L. c. 71, § 42, seventh par., as amended by St. 1993, § 71, § 44.[7] This sentence not only distinguishes "layoffs" from "dismissals" but also precludes the application of any provision of § 42 that would "affect the right of a superintendent to lay off teachers" for the specified reasons. Because the arbitrator could void the superintendent's action, the application of the statute's arbitration provisions would "af-

---

[6] In the statement of agreed material facts, the parties repeatedly and without qualification refer to the job actions at issue as "layoffs."

[7] The Act did not change the decisional law in regard to layoffs under the version of G. L. c. 72, § 42, in effect prior to St. 1993, c. 71, § 44.

The prior version of § 42 established (1) specific standards and (2) the general right to notice and a school committee hearing for dismissals, but then specified that § 42 "shall [not] affect the right of a committee to dismiss a teacher whenever an actual decrease in the number of pupils in the schools of the town renders such action advisable." G. L. c. 71, § 42, as amended through St. 1988, c. 153, §§ 4-6.

In 1980, the Supreme Judicial Court held that, given the quoted language, the statute's notice and hearing requirements did not apply to work force reductions occasioned by a decline in student enrollment. *Milne* v. *School Comm. of Manchester*, 381 Mass. 581, 582 (1980).

In 1982, the court extended its ruling to exempt all budget-induced layoffs from § 42's notice and hearing requirements. *Boston Teachers Union, Local 66* v. *School Comm. of Boston*, 386 Mass. 197, 215-216 (1982).

fect the right of a superintendent to lay off teachers," and the arbitration procedures in the Act do not extend to such economic layoffs.[8]

An additional reason for holding that the Act does not apply to the layoffs in issue here is that the agreement between the parties set out detailed procedures in regard to arbitration and the agreement was executed prior to the enactment of the Act.

In response to the report, we rule that the Act, in particular G. L. c. 71, § 44, does not apply to the teachers' layoffs. Therefore, the teachers are not entitled to an arbitration hearing in regard to their August, 1993, layoffs by the superintendent. A declaration consistent with this opinion is to be entered in the Superior Court.

*So ordered.*

---

[8]There is dictum in *Turner* v. *School Comm. of Dedham*, 41 Mass. App. Ct. 354, 356 n.3 (1996), suggesting that the Act's arbitration procedure is an available remedy for all teacher terminations, including economic layoffs. In that matter, we did not have the commissioner's arguments before us. Therefore, upon further consideration, we reject the language contained in the dictum.