## JUDITH BALLOTTE *VS.* CITY OF WORCESTER & another.[1]

No. 99-P-505.

Worcester. February 9, 2001. - June 1, 2001.

Present: PERRETTA, DREBEN, & LENK, JJ.

*Jurisdiction,* Superior Court. *Public Employment,* Collective bargaining. *School and School Committee,* Collective bargaining, Professional teacher status, Arbitration. *Arbitration,* School committee. *Statute,* Construction.

A trial court judge correctly concluded that a teacher with professional teacher status, who had been terminated from her employment due to budgetary reasons, was entitled to pursue her statutory claims for damages and reinstatement arising under G. L. c. 71, §§ 41-42, as amended by St. 1993, c. 71, §§ 43-44, in Superior Court. [730-731]

A Superior Court judge correctly concluded that, pursuant to the plain language of G. L. c. 71, § 42, a teacher with professional teacher status, who had been terminated from her employment due to budgetary reasons, should not have been laid off but should instead have been allowed to "bump" into a position for which she was qualified, at another school within the system, held by a teacher who did not have professional teacher status and who was in a different bargaining unit. [731-734]

An award on claims arising under G. L. c. 71, §§ 41-42, as amended by St. 1993, c. 71, §§ 43-44, was remanded to the trial judge for further findings and rulings on the issues of reinstatement, or an equivalent remedy, of a school teacher with professional teacher status to a position for which she was qualified, as well as appropriate offsets in mitigation. [734-735]

CIVIL ACTION commenced in the Superior Court Department on August 18, 1995.

The case was heard by *Christine M. McEvoy,* J.

*William H. Shaevel* (*Daniel S. O'Connor* with him) for the plaintiff.

*Steven Mourginis,* Assistant City Solicitor, for the defendants.

LENK, J. The plaintiff, Judith Ballotte, was a teacher at Worcester's Career Education Center for many years until she

---

[1]Thomas Hoover, as he is city manager.

was laid off on June 30, 1995, due to a reduction in force occasioned by a cutback in Federal funding. She was not permitted to "bump" into a comparable position at another school in the Worcester system nor was she subsequently rehired by the Worcester school system. She brought suit against her employers, the city of Worcester and its city manager (Worcester defendants), seeking damages and reinstatement, claiming that her employers' actions violated her rights under G. L. c. 71, §§ 41-42, as amended by St. 1993, c. 71, §§ 43-44. Ballotte prevailed after a jury-waived trial and was awarded damages.

The parties cross-appealed, Ballotte claiming that the judge erred by failing to award her the full relief required by statute, i.e., reinstatement and full back pay or an equivalent remedy. The Worcester defendants claim that the judge erred in three respects: (1) in assuming jurisdiction at all; (2) in determining that Ballotte could "bump" an instructor in another bargaining unit and in awarding damages; and (3) in not mitigating the back pay awarded by other income and retirement benefits Ballotte received from the city's retirement system.

1. *Factual background.* Neither party challenges the sufficiency of the evidence to support the trial judge's findings. We recite pertinent facts drawn from those findings and, where appropriate, from the uncontroverted evidence of record.

Ballotte has an associate's degree in business and bachelor's and master's degrees in English; she was certified in 1974 by the Massachusetts Department of Education in secondary English, social studies, and business subjects. She began teaching in 1971 as a substitute teacher in Worcester's public and vocational junior high and high schools but was hired in 1973 to a full-time position at the Career Education Center in Worcester, where she taught a business program involving a curriculum with heavy emphasis on English. Ballotte performed her duties satisfactorily.

The Career Education Center is one of three schools under the aegis of the Worcester vocational school department; much of its funding was from Federal sources. Teachers at the Career Education Center belonged to a bargaining unit of the Massachusetts Teachers Association separate from that to which the teachers at the other two vocational schools belonged. The

judge determined that the Career Education Center was a public school and that Ballotte had obtained professional teacher status pursuant to G. L. c. 71, § 41, upon the completion of three consecutive years of employment at the school.[2]

In 1995, there was a reduction in the amount of Federal funding the Career Education Center was to receive, and much of its staff, including Ballotte, was laid off. At the time of the June 30, 1995, layoff, Ballotte was a fifty-three year old widow; she had expected to continue teaching at the center until she was sixty-five years old. Ultimately, almost all of the laid-off Career Education Center staff were rehired by Worcester; that was not so for Ballotte. Although at the time Ballotte was laid off, an English teacher without professional teacher status taught at one of the other two schools in the Worcester vocational school department, Ballotte was not "bumped" into that position, one for which she was then currently certified.

Initially unable to secure other employment despite many efforts, Ballotte retired so that she could obtain continued health insurance coverage as part of her retirement benefits. Subsequently she obtained a modestly paid part-time teaching position without benefits as an adjunct professor at Quinsigmond College. This is a nontenured contract position which has been renewed annually since 1996.

2. *Jurisdiction.* The Worcester defendants contend that the Superior Court was without jurisdiction over Ballotte's claims, asserting that her exclusive remedy was arbitration pursuant to the collective bargaining agreement. They rely in this regard upon *Turner* v. *School Comm. of Dedham*, 41 Mass. App. Ct. 354 (1996), where we held that arbitration pursuant to G. L. c. 71, § 42, fourth par., as amended by St. 1993, c. 71, is the sole remedy for a teacher with professional teacher status to challenge the propriety of her termination. In *Turner*, as here, a teacher with professional teacher status was laid off as part of a reduction in force due to budgetary reasons; Turner also claimed

_____

[2]The defendants contend in their brief that they do not concede that the Career Education Center was a public school or that Ballotte had obtained professional teacher status. Since they have not otherwise raised the issue in their cross appeal nor challenged the judge's pertinent findings of fact and rulings of law, they have waived the issue.

that she was laid off while teachers without professional teacher status — for whose position she was certified — were retained. We remanded the matter for arbitration.

The trial judge assumed jurisdiction here notwithstanding *Turner*, in reliance upon our subsequent decision in *School Comm. of Westport* v. *Coelho*, 44 Mass. App. Ct. 614 (1998). In *Coelho*, the defendant teachers had professional teacher status but were terminated when their positions were eliminated due to budgetary reductions and curricular realignment. The teachers unsuccessfully grieved their termination in arbitration pursuant to the collective bargaining agreement, then sought arbitration pursuant to G. L. c. 71, § 42. The school committee sought declaratory and injunctive relief in Superior Court to prevent this. We held that the teachers were not entitled to arbitration under G. L. c. 71, § 42, because the arbitration process had application only to performance-based dismissals and not to budget-related layoffs. Since the teachers in *Coelho* had been laid off for economic reasons, they could not avail themselves of the arbitration procedures set forth in the statute. To the extent that dictum in *Turner* suggested otherwise, we disavowed it.

Nothing in *Turner* or *Coelho* suggests that teachers with professional teacher status who are laid off for economic reasons are without rights under G. L. c. 71, § 42; *Coelho* simply clarifies that such employees may not use statutory arbitration procedures to pursue them. Neither case suggests that teachers in Ballotte's position, unable to avail themselves of arbitration under G. L. c. 71, § 42, must entirely forgo their statutory claims under G. L. c. 71, § 42, and be limited only to arbitration of their contractual claims under a collective bargaining agreement. Neither *Turner* nor *Coelho* prevents Ballotte from pursuing her statutory claims in Superior Court. Thus, the judge was correct in asserting jurisdiction.

3. *Bumping rights.* The judge concluded that, since Ballotte was a teacher with professional teacher status at a public school, she had the right to bump into a position at another Worcester vocational high school held by a teacher without professional teacher status for which Ballotte was currently qualified. This bumping right has its source in the portion of G. L. c. 71, § 42,

that states, "No teacher with professional teacher status shall be laid off pursuant to a reduction in force or reorganization if there is a teacher without such status for whose position the covered employee is currently certified."

The Worcester defendants agree that Ballotte would have had the right to bump a teacher without professional teacher status within the same bargaining unit for whose position Ballotte was currently certified, but no such positions were available.[3] They dispute her right to bump a teacher without professional teacher status for whose position Ballotte was currently certified but who taught in another Worcester vocational school and was in a different bargaining unit. Ballotte concedes that her right to bump under the collective bargaining agreement is limited to positions in her own bargaining unit[4] but claims that G. L. c. 71, § 42, provides distinct and broader bumping rights and does not limit her to her own bargaining unit.

"General Laws c. 150E, § 7(*d*) [1994 ed.], lists those statutes that are subordinated to collective bargaining agreements. General Laws [c. 71, §§ 41-42,] is not among them. '[S]tatutes not specifically enumerated in § 7(*d*) will prevail over contrary terms in collective bargaining agreements.' " *School Comm. of Natick* v. *Education Assn. of Natick*, 423 Mass. 34, 39 (1996), quoting from *National Assn. of Govt. Employees* v. *Com-*

---

[3]Article 17 of the collective bargaining agreement, captioned "Reduction in Force" (rif), addresses the process by which members of the bargaining unit are to be separated from employment at the Career Education Center due to budget cuts and may be recalled to service in the center. Seniority is defined as "the number of years, months, and days of consecutive service . . . as an employee of the . . . Center," and affects the order by which members will be laid off from and recalled to the center in the event of a "rif." The counterpart provision, if any, in the collective bargaining agreement covering the other bargaining unit to which the teachers at Worcester's two other vocational schools belonged is not reproduced in the record.

[4]See, e.g., Article 17, § 4, of the collective bargaining agreement, which provides, in pertinent part, "When reduction in force occurs, the City will determine the order of 'rif' as follows:

"(a) The member(s) of the bargaining unit with less seniority within the particular discipline for which a 'rif' has been determined to be necessary shall be separated from employment before member(s) of the bargaining unit with greater seniority in the same discipline . . . ."

*monwealth*, 419 Mass. 448, 452, cert. denied, 515 U.S. 1161 (1995). See *Richard* v. *Retirement Bd. of Worcester*, 431 Mass. 163, 165-166 (2000); *Dedham* v. *Dedham Police Assn.*, 46 Mass. App. Ct. 418, 419-420 (1999). The pertinent terms of the collective bargaining agreement here do not expand or supplement the benefits provided by statute but instead appear to limit them. See note 4, *supra.* To the extent that the terms of the collective bargaining agreement at issue articulate criteria for reduction in force layoffs that do not take into account whether the teacher to be laid off, who has professional teacher status, may be currently certified for a position in the school system held by a teacher without professional teacher status, those terms are materially contrary to the statute. The collective bargaining agreement in such circumstances must yield to the statute.[5]

The Worcester defendants urge that we construe G. L. c. 71, § 42, as implicitly prohibiting cross-bargaining unit bumping within a single school system, as here. Such a limitation is not to be found in the clear and unambiguous language of the relevant portion of § 42 itself. We are ordinarily loath to import qualifying or limiting language into a statute that the Legislature did not in the first instance see fit to put there. See *General Elec. Co.* v. *Department of Envtl. Protection*, 429 Mass. 798, 802 (1999). See also *Commissioner of Rev.* v. *Cargill, Inc.*, 429 Mass. 79, 82 (1999). The Worcester defendants provide neither case authority nor a compelling rationale for us to depart from this practice now. Indeed, when construing a similar, albeit more restrictive, bumping-type statute in *Herlihy* v. *Civil Serv. Commn.*, 44 Mass. App. Ct. 835 (1998), we concluded, consistent with the evident legislative purpose of protecting the

---

[5]Although not raised by either party, we note that the 1993 statute amending G. L. c. 71, §§ 41-42, provided that said sections of the General Laws "shall not apply to employees subject to collective bargaining agreements executed prior to the effective date of this act insofar as such collective bargaining agreements are in conflict with said sections. Collective bargaining agreements effective after the date of this act [June 18, 1993, see *School Comm. of Westport* v. *Coelho*, 44 Mass. App. Ct. at 614 n.2,] shall be subject to the provisions of said sections." St. 1993, c. 71, § 77. The collective bargaining agreement governing Ballotte's layoff had an effective date of October 1, 1993. It thus was subordinated to the statute. Contrast *School Comm. of Westport* v. *Coelho*, *supra* at 619.

seniority rights of eligible employees, that a senior employee of the Department of Mental Health whose position was lawfully eliminated retained bumping rights across all of the department's regions and was not restricted to the particular facility or region from which he had been laid off. See *Rantz* v. *School Comm. of Peabody*, 396 Mass. 383, 386 (1985) (error to dismiss tenured principal when there were nontenured principals at other schools in town's system into whose positions plaintiff could have bumped).

We accordingly discern no error in the judge's determination that, pursuant to G. L. c. 71, § 42, Ballotte should not have been laid off but should instead have been allowed to bump into a position for which she was qualified at another vocational school in the Worcester system held by a teacher without professional teacher status.

4. *Damages.* Ballotte claims that the judge erred by failing to award her full relief,[6] i.e., reinstatement and full back pay or an equivalent remedy. The Worcester defendants claim that the judge erred in not reducing the amount awarded by other income and retirement benefits Ballotte has received since being laid off. The chief difficulty on appeal in reviewing the judge's award in either respect, however, is the absence of any articulated rationale for the calculation of the award and of any explanation of its elements.[7]

In comparable situations, reinstatement to the position to which the plaintiff was entitled (without loss of rights such as seniority, tenure, or retirement) together with damages in an amount reflecting what the plaintiff would have earned if not deprived of that new position, less mitigation, have been awarded. See *Rantz* v. *School Comm. of Peabody*, 396 Mass. at

---

[6] Ballotte contends that she was deprived of the full relief to which she is entitled under G. L. c. 71, § 42. Section 42 spells out the damages that an arbitrator is permitted to award for improper performance-related dismissals. The statute does not address specifically the damages that may be awarded for improper budget-related dismissals, but we assume without deciding that the same range of damages may be awarded in such instances as well.

[7] The judge's findings and rulings as to damages are as follows: "[T]he plaintiff is hereby entitled to damages in the amount of $73,350 for the time plaintiff would have worked in the Worcester School System, less $9,983 in mitigation, and less $8,180 for unemployment compensation received by the plaintiff."

385; *Assad* v. *Berlin-Boylston Regional Sch. Comm.,* 406 Mass. 649 (1990); *Farrington* v. *School Comm. of Cambridge,* 9 Mass. App. Ct. 474, 476 (1980), *S.C.,* 382 Mass. 324 (1981), citing *Ryan* v. *Superintendent of Schs. of Quincy,* 374 Mass. 670, 673-674 (1978). See also *Hosford* v. *School Comm. of Sandwich,* 421 Mass. 708, 717-718 (1996). We cannot discern from the judge's findings and rulings or from the record itself why reinstatement was not awarded here or the reason(s) why, in its absence, an equivalent remedy was not fashioned. Nor can we discern whether the back pay awarded was based upon the salary Ballotte would have earned if her position at the Career Education Center had not been eliminated or, as it should be, upon the position into which Ballotte was entitled to bump, along with adjusted retirement and other benefits as well as appropriate offsets in mitigation.

Given the inability on our part to discern the components of and rationale for the damage award, we vacate the judgment and remand this aspect of the matter to the trial judge for further findings and rulings consistent with this opinion. The judge may in her discretion receive such further evidence relating to damages as she may deem appropriate. Any new judgment shall, in conformance with G. L. c. 231A, declare the rights of the parties as reflected in the judge's August 12, 1998, rulings of law.

*So ordered.*