Lemire, James R., J.
Plaintiff Priscilla Gimas (“Gimas”) filed this action against her former employer and supervisors. In Count I of her complaint, the plaintiff makes a claim for infliction of emotional distress. In Count II, the plaintiff alleges that the defendants’ conduct constituted unlawful practices of discrimination on the basis of sex in violation of G.L.c. 15 IB and Title VII of the United States Civil Rights Act. In Count III, the plaintiff makes a claim for wrongful termination in violation of G.L.c. 71. The defendants move for summary judgment against all counts of the plaintiffs complaint. After a hearing, for the reasons set forth, the defendants’ motion for summary judgment is ALLOWED, in part, as to Counts I and III of the complaint, and DENIED as to Count II of the complaint.
BACKGROUND
The relevant undisputed facts are as follows. At all relevant times, Gimas was a teacher with professional status at the Southbridge High School, Joseph A. Bialy (“Bialy”) was the Principal and Dennis R. Desroches (“Desroches”) was the Assistant Principal of the Southbridge High School, and JoAnn D. Austin (“Austin”) was the Superintendent of Schools for the Town of Southbridge. On March 19, 1997, Austin issued to all principals an administrative directive which restricted access to a school nurse’s office to sick or injured students or staff members. After this directive was issued, a teacher informed Desroches that she had seen Gimas in the nurse’s office and requested clarification on the directive. Other staff members observed that Gimas was present in the nurse’s office on a daily basis. Gimas saw Sue Sommer (“Sommer”), the school nurse, for her medical problems.
On a separate occasion, School Committee member Athas Tsongalis (“Tsongalis”) complained to Austin on May 19, 1998 about a comment Gimas had made to him in the school hallway. Tsongalis was offended that Gimas related an incident about him and the Auburn Police Department which he believed was false.
Additionally, the school’s Director of Food Services, Robert Scott (“Scott”) reported an incident that occurred on May 29, 1998, involving Gimas to Austin and Bialy. Scott and his assistant had witnessed student Patricia Dupuis sit on Gimas’s lap. Scott considered this to be “unprofessional” behavior on Gimas’s part.
Austin directed Bialy to investigate the above incidents and Bialy delegated the investigation to Desroches. Desroches informed Gimas that he was investigating the alleged violation of school policy by Gimas’s visits to the nurse’s office, inappropriate physical contact with a student, and unsubstantiated statements concerning a member of the School Committee. Desroches interviewed Gimas, who responded to the allegations, and also interviewed Austin and Tsongalis, both of whom refuted Gimas’s statements. Finding sufficient evidence to support the allegations against Gimas, Desroches recommended that Gimas be terminated. After Gimas responded to his report, Desroches conducted further inquiries and reaffirmed his recommendation for termination. By letter dated February 8, 1999, Bialy sent Gimas a Dismissal Notice. Austin had approved Gimas’s termination.
Pursuant to G.L.c. 71, §42, the plaintiff filed a petition for arbitration on February 10, 1999. The arbitrator issued an award in favor of Gimas, finding that the School Committee “failed to prove that Priscilla Gimas was insubordinate, engaged in inappropriate and unprofessional conduct, or engaged in conduct unbecoming a teacher.” The arbitrator ordered that the Southbridge School Department reinstate Gimas to her position and compensate Gimas for back pay. The Town of Southbridge paid Gimas in excess of $109,000 along with other benefits to make her whole.
The plaintiff also filed a complaint with the Massachusetts Commission Against Discrimination (“MCAD”) on August 9, 1999 alleging that she was terminated on the basis of her sex and not on the basis of just cause. She also requested that her complaint be filed with the Equal Employment Opportunity Commission (“EEOC”) pursuant to Title VII of the Civil Rights Act of 1964. The MCAD dismissed her complaint on December 20, 2000. The plaintiff appealed the dismissal on January 4, 2001. An Investigating Commissioner sustained the dismissal due to a lack of probable cause on June 11, 2001. The EEOC dismissed her complaint on October 12, 2001. On January 14, 2002, the plaintiff filed this complaint.
DISCUSSION
Summary judgment shall be granted when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Cassesso v. Comm’r of Corr., 390 Mass. 419, 422 (1983); Mass.R.Civ.R 56(c). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). The moving pariy may satisfy this burden either by submitting affirmative evidence that negates an essential element of the opposing party’s case or by demonstrating that the opposing party has no reasonable expectation of proving an essential element of his case at trial. Flesner v. Technical Commc’ns Corp., 410 Mass. 805, 809 (1991); Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). Once the moving party establishes the *655 absence of a triable issue, the party opposing the motion must respond with evidence of specific facts establishing the existence of a genuine dispute. Pederson, 404 Mass. at 17. When reviewing a motion for summary judgment, the court must view the evidence in the light most favorable to the nonmoving party. Douillard v. LMR, Inc., 433 Mass. 162, 163 (2001).
I. The Plaintiffs Claim for Intentional Infliction of Emotional Distress (Count I)
“Workers’ compensation is the exclusive remedy against employers and coemployees who commit tor-tious acts ‘within the course of their employment and in furtherance of the employer’s interest.’ ” Fredette v. Simpson, 440 Mass. 263, 266 (2003), quoting Brown v. Nutter, McClennen & Fish, 45 Mass.App.Ct. 212, 216 (1998). See also O’Connell v. Chasdi, 400 Mass. 686, 689 (1987). General Laws c. 152, the Workers’ Compensation Act (“Act”), bars common-law actions where “(1) the plaintiff is shown to be an employee; (2) her condition is shown to be a personal injury within the meaning of the workers’ compensation act; and (3) the injury is shown to have arisen out of and in the course of her employment.”[2] Brown, 45 Mass.App.Ct. at 215, citing Foley v. Polaroid Corp., 381 Mass. 545, 548-49 (1980). A “personal injury” specifically includes “mental or emotional disabilities only where the predominant contributing cause of such disability is an event or series of events occurring within any employment.” c. 152, §1(7A). The Act, therefore, covers claims for “emotional distress arising out of employment.” Foley, 381 Mass. at 550. The Act, however, does not bar claims for tortious acts committed outside the course of employment and unrelated to the employer’s interest. Fredette, 440 Mass. at 266; O’Connell, 400 Mass. at 690.
Here, it is undisputed that the plaintiff was an employee of Southbridge High School. The plaintiffs alleged suffering of emotional distress due to the defendants’ conduct falls squarely within the scope of personal injuries covered by the Act. At issue is whether the defendants’ alleged acts were committed within or outside the course of employment.
“An employee has acted in the course of employment whenever he has, on the employer’s premises, engaged in conduct consistent with his contract of hire and pertinent or incidental to his employment.” Fredette, 440 Mass. at 266 (citation omitted). Even if an employee harbors more than one purpose for his action, that employee nonetheless acts in the course of employment “as long as one significant purpose is related to the employment.” Id. (citation omitted). The test to determine whether an injury arose out of and in the course of employment is thus a broad one, such that an injury arising out of an aspect of employment is subject to the exclusivity provision of the Act. Brown, 45 Mass.App.Ct. at 215.
The plaintiff claims that the defendants’ conduct was beyond the scope of their employment: Bialy desired to terminate Gimas for his own purposes, including his personal bias against her, and his termination of Gimas was not in the best interest of his employer; Desroches knew there was insufficient just cause for Gimas’s termination after his investigation, but nevertheless recommended her termination; and Austin failed to perform any separate inquiry into the validity of the allegations against Gimas. The plaintiffs claims are unavailing.
Even viewing the evidence in the plaintiffs favor, the emotional distress for which Gimas complains arose out of and in the course of employment. It is undisputed that at the time of the alleged incidents, Gimas was a teacher, Bialy was the school’s Principal, Desroches was the school’s Assistant Principal, and Austin was the Southbridge Superintendent of Schools. The defendants clearly were acting in their respective employment capacities and duties with respect to the investigation and eventual termination of Gimas and, thus, their conduct was related to the employer’s interest in enforcing school rules and policies. See Anzalone v. MBTA, 403 Mass. 119, 125 (1988). Accordingly, the plaintiffs claim for intentional infliction of emotional distress is barred by the exclusivity provisions of the Act.[3] Simmons v. Merchants Mut. Ins. Co., 394 Mass. 1007, 1007-08 (1985); Mullen v. Ludlow Hosp. Soc’y, 32 Mass.App.Ct. 968, 970 (1992). The defendants are entitled to summary judgment as a matter of law on Count I.
II. The Plaintiffs Claim of Sex Discrimination in Violation of G.L.c. 15 IB and Title VII of the United States Civil Rights Act (Count II)
A. Whether the MCAD Finding of No Probable Cause Bars the Plaintiffs Claim
The threshold issue before this court is whether it may consider the plaintiffs sex discrimination claim. Pursuant to G.L.c. 15IB, §9, a party which had filed an action before the MCAD may, after ninety days, bring an action in the Superior Court raising the same claim. Brienzo v. MCAD, 60 Mass.App.Ct. 917, 918 (2004) (determining that “the MCAD’s failure to find probable cause neither impeded the commencement of the Superior Court action, nor prejudiced the plaintiffs redress in that action”). Under c. 151B, §9, however, a party must file such an action in the Superior Court ’’not later than three years after the alleged unlawful practice occurred." C. 15 IB, §9.
Here, it is undisputed that the plaintiff received a dismissal notice by letter dated February 8, 1999 and subsequently filed an action before the MCAD on August 9, 1999. It is further undisputed that an Investigating Commissioner dismissed her claim of discrimination due to a lack of probable cause and that subsequent to her request for a preliminary hearing to appeal that determination, the same Investigating Commissioner sustained the dismissal. A Final Commission Order from the MCAD precludes a plaintiff from bringing a de novo action before the superior *656 court under c. 15 IB, §9. Brunson v. Wall, 405 Mass. 446, 448-51 (1989); G.L.c. 151B, §9 (“final determination on the merits shall exclude any other civil action, based on the same grievance of the individual concerned”). Because the Investigating Commissioner’s finding of no probable cause did not constitute a final order and because there was no formal adjudicatoiy hearing held before the full Commission pursuant to 804 C.M.R. 1.23, the plaintiff is not estopped from filing suit under §9.[4] Brunson, 405 Mass. at 453 n. 12. See also Brienzo, 60 Mass.App.Ct. at 918 (“(p)roceed-ing in the Superior Court provides a complete remedy to any error that may have been made by the MCAD in failing to find probable cause”).
For summary judgment purposes, the defendants have not shown that a final determination on the merits had occurred before the MCAD to bar the plaintiffs claim. The plaintiff filed her complaint in this court on January 14, 2002. This was done within the requisite time period, namely ninety days after initiating an MCAD action, but prior to the expiration of the three-year limitation period for the alleged unlawful act, her dismissal. The plaintiff, therefore, is not precluded from bringing suit in this court.
B. G.L.c. 151B and Title VII Claim
General Laws c. 15IB, §4 provides in relevant part that it
shall be an unlawful practice ... for an employer, by himself or his agent, because of the . . . sex . . . of any individual... to discharge from employment such an individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment, unless based upon a bona fide occupational qualification.
G.L.c. 151B, §4. The four basic elements of a c. 151B claim are membership in a protected class, harm, discriminatoiy animus, and causation. THHB, Inc. v. MCAD, 65 Mass.App.Ct. 329, 334 (2005). In applying c. 151B, Massachusetts courts follow “the three-stage order of proof set forth by the United States Supreme Court under the Federal antidiscrimination provisions of Title VII.” Blare v. Husky Injection Molding Sys. Boston, Inc., 419 Mass. 437, 440 (1995). Under this' three-stage approach: (1) the plaintiff employee has the burden to show a prima facie case of discrimination; (2) the defendant employer must rebut a presumption of discrimination raised by the showing of a prima facie case by articulating a legitimate, nondiscriminatory reason for its employment decision; and (3) the plaintiff must show that defendant’s decision was based upon unlawful discrimination. Abramian v. President & Fellows of Harvard, 432 Mass. 107, 116-17 (2000); THHB, Inc., 65 Mass.App.Ct. at 334.
1.The Prima Facie Case
At this initial stage, a plaintiff satisfies her burden of establishing a prima facie case of discrimination by showing that: (1) she is a member of a protected class under c. 15 IB; (2) she performed her job at an acceptable level; (3) she was terminated; and (4) she was disparately treated.[5] Abramian, 432 Mass. at 116; THHB, Inc., 65 Mass.App.Ct. at 334.
Here, the plaintiff is a member of a protected class under c. 15IB due to her sex. As to whether she performed her job at an acceptable level, this court considers the arbitration decision relevant to this inquiry. City of Boston v. MCAD, 39 Mass.App.Ct. 234, 239 (1995) (“forum adjudicating a statutory claim of discrimination may receive an arbitration decision in evidence and accord it the weight that seems appropriate”), overruled on other grounds by Tr. of Health and Hosp. of the City of Boston, Inc. v. MCAD, 65 Mass.App.Ct. 329 (2005). In his'decision, the arbitrator concluded that Gimas’s “professional competence has never been in question.” Additionally, it is undisputed that the plaintiff was terminated. Finally, the plaintiff alleges that male teachers were not disciplined as harshly as Gimas who was terminated for her alleged misconduct. Specifically, the plaintiff asserts that certain male teachers either were not disciplined or received minimal suspensions for their misconduct. The plaintiff, therefore, offers sufficient evidence to establish a prima facie case of discrimination.
2. Rebuttal
Because the plaintiff has established her prima facie case, the burden of production shifts to the defendants to rebut the presumption of discrimination. The defendants may rebut the presumption by articulating a nondiscriminatoiy reason for terminating the plaintiff. Abramian, 432 Mass. at 116. The defendants claim that they had a lawful reason for terminating Gimas’s employment. Specifically, the defendants state that they terminated the plaintiff after conducting an investigation into allegations of misconduct which they had found were substantiated. The defendants submit affidavits denying any discrimina-toiy motive or act on their part in dealing with the plaintiff. Further, it is undisputed that the dismissal notice indicated that the plaintiff was dismissed for insubordination, engaging in inappropriate and unprofessional conduct, and engaging in conduct unbecoming a teacher. The defendants satisfy their burden.
3. Pretext
At this stage, the plaintiff must show that the employer’s termination decision was based upon unlawful discrimination. Abramian, 432 Mass. at 117. The plaintiff may accomplish this by showing that the employer’s reasons for termination were a pretext. Id. The plaintiff alleges that defendants Biafy and Desroches terminated her because of their perception of her relationships with other women, in particular, Sommer and Dupuis. The record indicates that two of the three instances of purported misconduct by Gimas, which formed the basis for her dismissal, involved Sommer and Dupuis. Further, the plaintiff *657 states that on one occasion Gimas and Dupuis were walking in a school hallway when they were approached by a male teacher who commented on the impropriety of girls kissing other girls. According to the plaintiff, the student reported this incident to defendant Bialy, who failed to discipline the male teacher.
For summary judgment purposes, the plaintiff sufficiently has established the existence of a genuine dispute as to whether the defendants discriminated against Gimas on the basis of her sex. The above conflicting evidence concerning the defendant’s motive in terminating Gimas makes summary judgment inappropriate under the circumstances. Blare, 419 Mass. at 445 (“the ultimate issue of discrimination raised by the plaintiffs and defendant’s conflicting evidence as to the defendant’s motive is not for a court to decide but is for the fact finder after weighing the circumstantial evidence and assessing the credibility of witnesses”). Therefore, summary judgment is denied as to Count II of the plaintiffs complaint.
III. The Plaintiffs Claim for Wrongful Termination in Violation of G.L.c. 71 (Count III)
General Laws c. 71, §42 provides that a teacher “with professional teacher status shall not be dismissed except for inefficiency, incompetency, incapacity, conduct unbecoming a teacher, insubordination . . .” c. 71, §42. The statute “outlines an extensive and exclusive arbitration procedure for . . . performance-based dismissals . . .” Westport Sch. Comm. v. Coelho, 44 Mass.App.Ct. 614, 618 (1998). The statute explicitly prohibits an arbitrator from awarding punitive, consequential, nominal or compensatory damages other than back pay, benefits, or reinstatement, c. 71, §42. The statute further provides that “[w]ith the exception of other remedies provided by statute, the remedies provided hereunder shall be the exclusive remedies available to teachers for wrongful termination.” Id. Pursuant to this statute, the remedy for a teacher with professional status to challenge an alleged wrongful termination due to “performance-based” reasons is through arbitration. See Turner v. Sch. Comm. of Dedham, 41 Mass.App.Ct. 354, 358-59 (1996) (finding that Legislature repealed c. 71, §43A, “thereby taking away the right of teachers [with professional teacher status] to challenge their dismissal by filing an action in the Superior Court”).[6]
The defendants claim -that because the plaintiff pursued her right to arbitration under c. 71, §42, she cannot now pursue additional relief for the same claim in a civil action. The plaintiff claims that she does not seek additional back pay, but “does seek damages, in tort, for the intentional infliction of emotional distress and discrimination based on sex, for her termination that was determined by the arbitrator to be wrongful.” Plaintiffs Memorandum in Opposition, at 11. The plaintiff further claims, albeit speciously in regard to this present claim of wrongful termination, that the issues “of whether Gimas was subjected to intentional Infliction of emotional distress . . . and whether her termination was based on discrimination based on sex are issues that need to be determined at trial.” Id., at 10-11.
As the plaintiff herself emphasizes, it is undisputed that Gimas arbitrated the issue of her dismissal and received an arbitration award in her favor. The plaintiff has received the remedy afforded by c. 71, §42. The plaintiff cannot now seek damages in circumvention of this statutory relief by claiming that the defendants violated c. 71, §42 by dismissing her to inflict emotional distress or to discriminate against her based on her sex. As discussed above, other statutes provide relief for these separate claims. The plaintiff fails to establish that there is a genuine issue of material fact for trial. Accordingly, the defendants are entitled to summary judgment on Count III of the plaintiffs complaint.
ORDER
For the foregoing reasons, the defendants’ motion for summary judgment is ALLOWED, in part, as to Counts I and III of the complaint, and DENIED as to Count II of the complaint.

General Laws c. 152, §26 bars such common-law actions absent the written notice required under c. 152, §24. Brown, 45 Mass.App.Ct. at 214-15. The plaintiff does not claim such notice was given here.

The plaintiffs reliance on Morehouse v. Berkshire Gas Co., 989 F.Sup. 54, 65 (D.Mass. 1997), and Bourbeau v. City of Chicopee, 445 F.Sup. 20 106, 117 (D.Mass. 2006), is misplaced. Both cases found sufficient facts as to tortious conduct unrelated to the employer interest to warrant the denial of the defendants’ motion for summary judgment.

Similarly, because there was no final order by the MCAD, judicial review and enforcement under G.L.c. 15 IB, §6 and 804 C.M.R. 1.25(1) is inapplicable in this case. See Brunson, 405 Mass. at 451-52; G.L.c. 151B, §6.

Massachusetts courts usually phrase the fourth element as whether the plaintiffs employer sought to fill her position by hiring another person with similar qualifications. Abramian, 432 Mass. at 116; Blare, 419 Mass. at 441. The elements of the plaintiffs burden, however, may vary depending upon the circumstances. Abramian, 432 Mass. at 116; Blare, 419 Mass. at 441. Therefore, the elements “may be altered to fit the factual needs of the kind of discrimination allegedly at work in a given case.” THHB, Inc., 65 Mass.App.Ct. at 334, citing Sullivan v. Liberty Mut. Ins. Co., 444 Mass. 34, 41-45 (2005). Here, the plaintiff specifically alleges that she was treated differently from male teachers.

Compare Turner v. Sch. Comm. of Dedham, 41 Mass.App.Ct. 354, 358-59 (1996), with Ballotte v. City of Worcester, 51 Mass.App.Ct. 728, 731 (2001) (holding that teacher with professional teacher status laid off for budgetary reasons may pursue G.L.c. 71, §42 claim against employer in superior court) and Westport Sch. Comm. v. Coelho, 44 Mass.App.Ct. 614, 619 (1998) (holding that the arbitration procedures in G.L.c. 71, §42 does not extend to economic layoffs). Lyons v. Sch. Comm. of Dedham, 440 Mass. 74, 80 (2003), acknowledges that Ballotte and Coelho apply to teachers who are laid off for budgetary reasons and not to those who are dismissed for performance-based reasons.