## Paul H. Gates vs. John H. Flood.[1]

No. 00-P-1728.

Norfolk. April 11, 2002. - April 9, 2003.

Present: DUFFLY, BECK, & COHEN, JJ.

*Employment,* Discrimination. *Anti-Discrimination Law,* Age. *Public Employment,* Retirement. *Sheriff. Practice, Civil,* Challenge of jurors, Instructions to jury.

In a civil action, the judge erred in disallowing the plaintiff's peremptory challenges of two jurors on the ground that the challenges impermissibly sought removal of the jurors on the basis of age, which the judge considered to be a suspect classification, where age was not among the categories that would warrant limitation on the exercise of peremptory challenges; therefore, this court ordered a new trial. [742-743]

In a civil action alleging that the plaintiff had been forced to retire due to his age, in violation of G. L. c. 151B, § 4, the judge erred in instructing the jury that they should focus on the employer's motive for its employment decision, and that they could consider whether the employer's nondiscriminatory reason for the action was a pretext, where the plaintiff advanced direct and essentially uncontroverted evidence that age alone was the basis for the discharge decision, and thus, motivation, pretext, and other burden-shifting components of an age discrimination claim based on circumstantial evidence had no role to play in the trial of this case. [743-745]

CIVIL ACTION commenced in the Superior Court Department on February 5, 1998.

The case was tried before *Elizabeth M. Fahey,* J., and a motion for a new trial was heard by her.

*Scott A. Lathrop* for the plaintiff.

*Stephen C. Pfaff* for the defendant.

DUFFLY, J. Paul H. Gates, a physician who had been employed by the Norfolk County sheriff's office, brought this action against the sheriff's office and its sheriff, John H. Flood, alleging that he was forced to retire due to his age, in violation of

---

[1]As he is sheriff of Norfolk County.

G. L. c. 151B, § 4. The complaint against the sheriff's office having been dismissed, the matter proceeded to trial solely against the sheriff. In answer to special questions, a Superior Court jury found that the sheriff did not discriminate against Dr. Gates on the basis of his age. The plaintiff filed a motion for a new trial predicated on several claimed errors,[2] and appeals the denial of that motion. We agree that the judge's ruling denying the plaintiff two peremptory challenges was erroneous and requires a new trial. We discuss this issue, and the claim that the judge erred in charging the jury (because it may recur at any retrial).

*Facts.* There was evidence that warranted the jury in finding the following. Dr. Gates was employed as a physician by the Norfolk County sheriff's office beginning in 1953, and became its full-time medical director in 1993. In the spring of 1997, Sheriff Flood directed that the sheriff department's superintendent of human resources, Daniel Shea, and its superintendent of administration, Josephine Shea, review all classifications of employees sixty-five years of age and over in order to ascertain which employees could be classified as "Group 4"[3] and therefore subject to mandatory retirement upon attaining age sixty-five. See G. L. c. 32, § 3(2)(*g*).[4] Based on the assessments, the sheriff concluded, erroneously as it turns out, that Dr.

---

[2]Gates claims entitlement to a new trial on the grounds that the judge (1) improperly denied him the right to exercise two peremptory challenges; (2) improperly instructed the jury as to pretext and mixed motive where the evidence did not warrant the giving of either instruction; and (3) improperly answered a jury question. He further argues that his motion for a new trial should have been allowed because the verdict was contrary to law and was against the weight of the evidence.

[3]General Laws c. 32, § 3(2)(*g*), provides for classification of public employees by the retirement board, in one of four numbered "groups" for retirement purposes. Group 4 includes "the sheriff, superintendent, assistant superintendent, assistant deputy superintendent and correction officers of county correctional facilities," among others. "A Group 4 employee must retire on the last day of the month in which he or she attains age sixty-five." *Fine* v. *Contributory Retirement Appeal Bd.*, 401 Mass. 639, 640 (1988).

[4]The sheriff and the county's legal counsel testified that the impetus for conducting the assessment of employees was that prior thereto an employee over the age of sixty-five had been injured on the job, and that because he was classified as a Group 4 employee who was therefore subject to superannuation retirement at age sixty-five, the employee was not entitled to receive disability benefits. The sheriff testified that with respect to those he identified

Gates, as well as certain other individuals, should be so classified. A letter from the sheriff dated May 15, 1997, informed Dr. Gates that he would have to retire because he had attained the age of sixty-five.[5] The sheriff's stated basis for this action was that "age is a reasonable, necessary [bona fide occupational qualification] for service in the occupation of correctional officer. You are currently assigned to a position in which the Retirement Board has classified you as a Group 4 employee because of your daily contact and interaction with inmates in the Norfolk County Sheriff's Office." The letter notified Dr. Gates that if he failed to make arrangements to apply for superannuation retirement, "I will have no choice except to submit an Involuntary Retirement under the provisions of [G. L. c. 32, § 16]." Dr. Gates was informed that his last active date of employment would be May 23; accumulated and unused leave would allow him to remain on the payroll until July, 1997.[6]

The statement in the sheriff's letter, that "the Retirement Board has classified you as a Group 4 employee," was not accurate, in that the board had not yet been asked to classify Dr. Gates in any group. Although G. L. c. 32, § 3($g$), provides that, upon receipt of information from the sheriff that includes such information as an employee's duties and rate of compensation, "the [retirement board] shall classify each member in one of the [four] groups," nearly a month passed after the letter was sent before such classification was sought.

At a June 11, 1997, meeting of the Norfolk County retirement board, Josephine Shea — who, in addition to holding the position of superintendent of administration, was at the time also a member of the retirement board — made a motion to

as Group 4 employees, "I felt it was incumbent upon me to notify them and to instruct them as to what the procedures were for their retirement, unless they wanted to stay and run the risk," and further that, "as a business practice, I knew if something happened to one of these employees, and they had no notice, and they were injured, they'd have no recourse but, in effect, to sue the Norfolk County Sheriff's office."

[5]It is undisputed that Dr. Gates' job performance consistently had been, and was at the time the letter was sent, satisfactory.

[6]Dr. Gates filed a voluntary application for superannuation retirement on May 20, 1997; in connection with this application, he accepted retirement effective July 23, 1997.

classify Dr. Gates and other members over the age of sixty-five as Group 4 employees. That motion failed with respect to Dr. Gates. Instead, the board voted to classify Dr. Gates as a Group 2 employee for retirement purposes, meaning that Dr. Gates could not be required to retire at any age (subject to requirements regarding medical examinations not at issue here). G. L. c. 32, § 90H.[7] The sheriff did not challenge the determination,[8] did not inform Dr. Gates of his right to hearing or review, and took no steps to reinstate Dr. Gates in his former position.

In a letter from the chairman of the Norfolk County retirement commission dated July 1, 1997, a copy of which was sent to the sheriff, Dr. Gates was advised that as a Group 2 member he was not required to retire at age sixty-five. On July 2, 1997, Dr. Gates wrote to Sheriff Flood asking him about his "reaction to this new information." He wrote again on July 22, 1997, noting that his retirement was not mandatory and the sheriff's notice to him was incorrect, and asking that he be reinstated immediately. Receiving no response to either letter, or to a subsequent letter sent by his attorney to Sheriff Flood that also demanded immediate reinstatement, Dr. Gates filed suit in Superior Court.[9]

*Discussion.* 1. *Denial of peremptory challenges.* After a jury of twelve had been selected, Dr. Gates sought to exercise two remaining peremptory challenges. See G. L. c. 234, § 29 (in civil action "each party shall be entitled to four peremptory challenges"). The defendant's counsel objected, arguing that the challenges impermissibly sought removal of jurors on the basis of age. The judge disallowed the challenges on the ground that age is a suspect classification under *Commonwealth* v. *Soares*, 377 Mass. 461, 488-489, cert. denied, 444 U.S. 881 (1979). This ruling was erroneous.

---

[7]General Laws c. 32, § 90H, in effect at all times relevant to this matter, has since been repealed. See St. 2000, c. 123, § 28.

[8]Action in the nature of certiorari under G. L. c. 249, § 4, would be the appropriate vehicle for redress in these circumstances. *Superintendent of Pub. Works of Attleboro* v. *Attleboro Contributory Retirement Bd.*, 38 Mass. App. Ct. 130, 131 n.5 (1995).

[9]We assume, because the issue has not been raised and the record does not suggest otherwise, that Dr. Gates fulfilled any applicable prerequisites to instituting suit. See G. L. c. 151B, § 9.

"The essential nature of the peremptory challenge is that it is one exercised without a reason stated, without inquiry and without being subject to the court's control." *Swain* v. *Alabama*, 380 U.S. 202, 220 (1965). In criminal matters, the right is tempered by art. 12 of the Massachusetts Declaration of Rights, which has been construed to proscribe "the use of peremptory challenges to exclude prospective jurors solely by virtue of their membership in, or affiliation with, particular, defined groupings in the community," specifically delineated as groupings based on "sex, race, color, creed or national origin." *Commonwealth* v. *Soares*, 377 Mass. at 486, 488-489 & n.33. In *Commonwealth* v. *Wood*, 389 Mass. 552, 564 (1983), the court held that age was not among the categories that would warrant limitation on the exercise of peremptory challenges in a criminal trial. The reasoning of *Soares* and *Wood* is applicable to jury selection in civil trials. "Civil litigants, as well as parties in criminal cases, are entitled to a jury that has not been unfairly skewed." *Anderson-Mole* v. *University of Mass.*, 49 Mass. App. Ct. 723, 724 (2000). The judge's disallowance of the plaintiff's right to exercise two of his peremptory challenges entitles the plaintiff to a new trial. See *Beaupre* v. *Cliff Smith & Assocs.*, 50 Mass. App. Ct. 480, 483 (2000) (to warrant reversal, party must demonstrate that he was required to accept one or more jurors he wished to challenge). See also *Searle* v. *Roman Catholic Bishop of Springfield*, 203 Mass. 493, 500 (1909); *Kabatchnick* v. *Hanover-Elm Bldg. Corp.*, 331 Mass. 366, 370-371 (1954).

We next discuss the claim that the jury were improperly instructed, because this issue may arise at any retrial. We do not address the remaining claims, as the issues presented are not likely to recur.

2. *Erroneous jury instructions.* Dr. Gates contends that the judge erred when she instructed that the jury focus on the employer's motive for its employment decision,[10] and that they consider whether the employer's nondiscriminatory reason for

---

[10]The sheriff's demand that Dr. Gates retire or he would be involuntarily retired, and Dr. Gates's application for voluntary retirement in response to this demand, was an involuntary change in Dr. Gates' employment status initiated by his employer — in effect, a discharge. See *GTE Prods. Corp.* v. *Stewart*, 421 Mass. 22, 33-34 (1995) (constructive discharge occurs when employer's conduct effectively forces employee to resign). Cf. *Flesner* v. *Technical Com-*

the action was a pretext. The jury should not have been instructed to consider pretext or motive ("mixed" or otherwise) in connection with the claim of discrimination, because consideration of those factors is appropriate only in cases where the plaintiff seeks to prove discrimination circumstantially. See *Wynn & Wynn, P.C.* v. *Massachusetts Commn. Against Discrimination*, 431 Mass. 655, 664-665 (2000). Here, the plaintiff advanced direct, and essentially uncontroverted, evidence that age, and age alone, was the basis for the discharge decision. Motivation, pretext, and other burden-shifting components of an age discrimination claim that is based on circumstantial evidence thus had no role to play in the trial of this case. *Ibid.* G. L. c. 151B, § 4. Accord *Blare* v. *Husky Injection Molding Sys. Boston, Inc.*, 419 Mass. 437, 445 n.8 (1995) ("If the plaintiff has direct evidence and the fact finder credits the direct evidence that discrimination was the motivating factor then the plaintiff prevails"). See, e.g., *Trans World Airlines, Inc.* v. *Thurston*, 469 U.S. 111, 121 (1985) (shifting burdens of proof set forth in *McDonnell Douglas Corp.* v. *Green*, 411 U.S. 792, 802-805 (1973), are designed to assure that plaintiff has his day in court despite unavailability of direct evidence; where there was direct evidence that method of transfer available to disqualified captain depended upon his age, employer's transfer policy was discriminatory on its face).[11] See also *Johansen* v. *NCR Comten,*

---

*munications Corp.*, 410 Mass. 805, 808, 812 (1991) (employee's resignation, after being told he should resign so that he could receive severance pay or he would be fired the next day, treated as discharge; question for jury was motive for discharge).

On the record before us, we do not address the extent of the sheriff's affirmative obligations, if any, pertaining to an employee's rights upon discharge, or pertaining to such rights upon involuntary retirement. See, e.g., G. L. c. 32, § 16.

[11]The judge's instructions adhered generally to the line of cases beginning with *McDonnell Douglas Corp.* v. *Green*, 411 U.S. 792, 802-805 (1973), that outline the allocation of shifting burdens when the plaintiff's case is circumstantial, not direct, and therefore begins with the burden on the plaintiff to set forth a prima facie case. It was not correct and could only have confused the jury to instruct that they might "consider the reasonableness or lack of reasonableness of the Defendant's stated business judgment, along with all of the other evidence, in determining whether the Defendant discriminated against the Plaintiff;" that the burden was on the plaintiff to establish by a preponderance of the evidence "that the adverse employment decision was motivated in part by unlawful bias, and in part by a legitimate reason," before the burden

*Inc.*, 30 Mass. App. Ct. 294, 299 (1991).[12]

It is no defense to a discharge based solely on age that the employer mistakenly believed that age was a bona fide occupational qualification (BFOQ) for the employee's job.[13] Cf. *Trans World Airlines, Inc.* v. *Thurston, supra* at 124 ("The two statutory defenses raised by petitioners do not support the argument that this discrimination is justified. The BFOQ defense is meritless because age is not a bona fide occupational qualification for the position of flight engineer, the job from which the respondents were excluded"). Were we to decide otherwise, employees in the position of the plaintiff would have no recourse.

*Conclusion.* We vacate the judgment and remand for a new trial consistent with this opinion.

*So ordered.*

---

would shift to the defendant; and that the jury could find that the sheriff had discriminated if they found "that the reasons stated by the Defendant, the stated reason to protect the Plaintiff and the County, because of the Defendant's interpretation of the statute, was not the true reason, or that it was a pretext."

[12]References in these cases to "motivation" and "animus" do not mean that an employer must be found to have a negative motive or feelings of animosity, but only that age was the moving or animating force behind the decision, regardless of intent.

[13]The evidence that the sheriff believed that he was permitted by statute to require Dr. Gates's retirement was relevant to the question whether Dr. Gates was entitled to double or treble damages. Such damages are available if a jury were to conclude that the sheriff terminated or failed to reinstate Dr. Gates "with knowledge, or reason to know, that such act or practice violated the provisions of [] section four [of c. 151B]." G. L. c. 151B, § 9. See *Brownlie* v. *Kanzaki Specialty Papers, Inc.*, 44 Mass. App. Ct. 408, 420 (1998). See also *Trans World Airlines, Inc.* v. *Thurston*, 469 U.S. 111, 129-130 (1985) (where record was clear that employer acted reasonably and in good faith in attempting to determine whether its plan would violate Federal Age Discrimination in Employment Act, employer's discriminatory acts were not wilful or in reckless disregard of requirements of Act, and respondents were not entitled to liquidated or double damages).