SUPERIOR COURT 
 
 JEFFREY MACHADO and HERIK ESPINOSA, on behalf of themselves and of similarly situated individuals

 
 Docket:
 2017-2056
 
 
 Dates:
 December 21, 2018
 
 
 Present:
 
 
 
 County:
 SUFFOLK, ss.
 

 
 Keywords:
 MEMORANDUM OF DECISION AND ORDER ON JEFFREY MACHADO AND HERIK ESPINSOA'S MOTION FOR JUDGMENT ON THE PLEADINGS AND SUMMARY JUDGMENT; WASHINGTON SANTOS' MOTION FOR JUDGMENT ON THE PLEADINGS AND SUMMARY JUDGMENT; AND DEFENDANTS' CROSS MOTIONS FOR JUDGMENT ON THE PLEADINGS 
 
 

 
    The plaintiffs, Jeffrey Machado, Herik Espinosa, and Washington Santos, are Massachusetts veterans who deployed abroad during a time of war and were honorably discharged from their initial enlistments. Thereafter, the plaintiffs reenlisted, but were discharged from their final enlistments "under other than honorable conditions." The plaintiffs   -1-   then applied for the "Welcome Home Bonus," which
Massachusetts provides to residents who served in the United States armed
forces after September 11, 2011. To be eligible for the Welcome Home Bonus, the
service member must have been "discharge[d] or release[d] under honorable
conditions from such service," among other criteria. Relying on the
characterization of their final enlistment period as "under other than
honorable conditions," the defendants, Deborah Goldberg, in her official
capacity as Treasurer and Receiver General ("Treasurer"), and the
Veterans' Bonus Appeal Board ("Board"), the governmental entity
within the treasury which aids in administering the Welcome Home Bonus, denied
the plaintiffs' requests. The plaintiffs challenge these denials. Presently before the court are four
sets of motions: Docket No. 17, 17‑2056: Machado and
Espinosa's Motion for Judgment on the Pleadings as to Counts I and II of their
Amended Complaint under G.L. c. 30A and Motion for Summary Judgment as to
Counts III to VIII alleging constitutional and class claims; Docket No. 20, 17‑2056: Defendants'
Cross‑Motion for Judgment on the Pleadings as to Counts I and II of Machado and
Espinosa's Amended Complaint; Docket No. 8, 18‑1310: Santos'
Motion for Judgment on the Pleadings as to Count I of his Complaint under G.L.
c. 30A and Motion for Summary Judgment as to Counts II to VI alleging
constitutional and class claims; and No Docket Number, 18‑1310:
Defendants' Cross‑Motion for Judgment on the Pleadings as to Count I of Santos'
Complaint. For the reasons discussed below,
and in light of the arguments made by counsel, the Court rules as follows:   -2- Docket No. 17, 17‑2056: Machado and
Espinosa's Motion for Judgment on the Pleadings as to Counts I and II of their
Amended Complaint is ALLOWED and their Motion for Summary Judgment as to Counts
III to VIII is DENIED AS MOOT; Docket No. 20, 17‑2056: Defendants'
Cross‑Motion for Judgment on the Pleadings as to Counts I and II of Machado and
Espinosa's Amended Complaint is DENIED; Docket No. 8, 18‑1310: Santos'
Motion for Judgment on the Pleadings as to Count I of his Complaint is ALLOWED,
and his Motion for Summary Judgment as to Counts II to VI is DENIED AS MOOT;
and No Docket Number, 18‑1310:
Defendants' Cross‑Motion for Judgment on the Pleadings as to Count I of Santos'
Complaint (no paper number) is DENIED. The Court REMANDS these matters
back to the Board for reconsideration in light of this decision. STATUTORY BACKGROUND The Welcome Home Bonus statute
("Bonus Law") grants post‑9/11 veterans monetary payments in amounts
that vary depending on the location of their military service. The Veteran's
Bonus Division, under the direction of the Treasurer, administers the Bonus
Law. The Bonus Law provides: (a) Notwithstanding any general or
special law to the contrary, upon application, ..., there shall be paid to each
person who shall have served in the armed forces of the United States in active
service as part of part of Operation Enduring Freedom, Operation Iraqi Freedom,
Operation Noble Eagle, Operation Inherent Resolve, Operation Freedom Sentinel
or any successor or related operation and who was discharged or released under
honorable conditions from such service, the sums specified in this section; if
the domicile of every person on account of whose service the application is
filed, shall have been in the commonwealth for a period of not less than 6
months before the time of his entry into the service.   -3-   (1) $1,000 to each such veteran who
performed active service outside the continental limits of the United States in
the Afghanistan or Iraq area as those areas are described by proper federal
authority. (2) $500 to each such veteran who
performed active service within the continental limits of the United States or
outside the continental limits of the United States other than in the
Afghanistan or Iraq areas for a period of 6 months or more. St. 2005, c. 130, '
16 as amended by St. 2005, c. 167, '
4.[1] A service member who "is eligible to receive benefits under [the
Bonus Law] may receive such benefits; provided, however, that an eligible
resident shall receive the full bonus allowed by said [Bonus Law] upon return
after his first deployment to [a qualifying military operation]. ... He shall
thereafter receive 50 per cent of the bonus ... after each subsequent return
from deployment to [a qualifying military operation]." St. 2011, c. 171, ' 3. Applications for a bonus under the
Bonus Law "shall be filed with the state treasurer, upon forms to be
furnished by [her]." St. 2005, c. 167, '
4. Then the adjutant general shall certify to
the state treasurer the dates of service and any other military information
necessary to carry out the provisions of this act. The state treasurer shall
furnish to the adjutant general a copy of Form DD‑214 or equivalent
documentation as determined by the adjutant general for the permanent record of
the military division of the commonwealth. St. 2005, c. 167, '
4. The form mentioned above, the Form
DD‑214, is a document issued by the military when an active‑duty service member
is discharged. See Department of Defense Instruction 1336.01, ' 4.3(a) (Aug. 20, 2009) ("The DD
Form 214 will provide an accurate and complete summation of active military
personnel service. It will provide the Military Services with an authoritative
source of personnel information for administrative purposes, and for making
enlistment or reenlistment eligibility determinations."); see also Army
Regulations 635‑8, 5‑1 (Feb. 10, 2014)   ---------------------------   [1]Until 2018, the Bonus law was
found in session laws. As of November 7, 2018, the law is contained in G. L. c.
10, ' 78. As
the Board decided these matters before November 7, 2018, the Court will refer
to the session laws in this decision and specifically, the session laws of
2005, as the Board relied on the 2005 session laws in making its
determinations.   -4-   ("The DD Form 214 is a summary of the Soldier's most
recent period of continuous active duty."). Form DD‑214 is the
"authoritative source of information required for the administration of
State and Federal laws applicable to personnel who have been discharged."
Department of Defense Instruction 1336.01, '
4.3(f) (Aug. 20, 2009). When an active‑duty military member
decides to reenlist, the military discharges that service member from his or
her current enlistment, and then the service member enters a new enlistment
contract. See Department of Defense Instruction 1332.14, Enclosure 3, ' 2(a)(4) (Jan. 27, 2014) (enlisted
service member may be separated for immediate reenlistment). The military does
not issue Form DD‑214 when discharging an active‑duty service member for
purposes of immediate reenlistment. See Army Regulations 635‑8, ' 5‑2(f) (Feb. 10, 2014). Rather, it
issues Form DD‑256, "Discharge Certificate, Honorable." A military
member who seeks to reenlist can only do so if his or her discharge from the
prior enlistment was honorable. $ee 10 U.S.C. '
508(a) ("No person whose service during his last term of enlistment was
not honest and faithful may be reenlisted in an armed force. However, the
Secretary concerned may authorize the reenlistment in the armed force under his
jurisdiction of such a person if his conduct after that service has been
good."); Department of Defense Instruction 1332.14, Enclosure 3, ' 2(a)(4) and 2(b) (Jan. 27, 2014);
Department of Defense Instruction 1332.14, Enclosure 4, '
3(b)(2)(a) (Jan. 27, 2014). When that service member is separated from active
service and returns to civilian status, the Form DD‑214 is completed as
follows: The date entered in Block 12a shall
be the date of enlistment for the earliest period of continuous active service
for which a DD Form 214 was not previously issued. For Service members who have
previously reenlisted without being issued a DD Form 214, and who are being
separated with any discharge characterization except 'Honorable,' the following
statement shall appear as the first entry in Block 18 on the DD Form 214: 'CONTINUOUS
HONORABLE ACTIVE SERVICE FROM (applicable date) UNTIL (applicable date).'   -5-   (1) The 'from' date shall be the
date of initial entry into active duty, or the first day of service for which a
DD Form 214 was not previously issued, as applicable. (2) The 'until' date shall be the
date before commencement of the current enlistment. Department of Defense Instruction 1336.01, Enclosure 3, ' 3(j) (Aug. 20, 2009); Army Regulations
635‑8 ' 5‑6(r)(4)(b)
(Feb. 10, 2014). Under the Bonus Law, any person
aggrieved by a decision of the Treasurer in the matter of payments provided
under the Bonus law may appeal to the Board. St. 2005, c. 167, ' 4. FACTUAL BACKGROUND Espinosa served on active duty in
the United States Army from November 9, 2004 until February 19, 2016, including
a tour of duty in Afghanistan as part of one of the operations identified in
the Bonus Law.[2] Espinosa was honorably discharged on January 31, 2008 and
February 10, 2015, and after each of these discharges, he immediately
reenlisted. Espinosa was finally discharged on February 19, 2016, "under
other than honorable conditions," as reflected in his Form DD‑214. Machado served on active duty in
the United States Army from March 7, 2011 until September 12, 2014. On December
18, 2012, he was deployed to Afghanistan until August 23, 2013 as part of one
of the operations identified in the Bonus Law. In order to deploy, Machado elected
to extend his Army enlistment. While in Afghanistan, Machado re‑enlisted.
Machado was finally discharged on September 12, 2014, "under other than
honorable conditions," as reflected in his Form DD‑214.   ---------------------------   [2]The Court understands the term
"enlistment' refers to be the period of time during which a military
member commits himself to military service in an enlistment agreement. The
phrase "tour of duty," by contrast, means the period of time spent by
a service member in combat or in a hostile environment.   -6-   Santos served on active duty in the
United States Army from September 15, 2004 until February 10, 2012, including a
deployment in Afghanistan as part of one of the operations identified in the
Bonus Law. Santos was discharged honorably on April 23, 2007 and October 8,
2007, and after each, immediately reenlisted. Santos was finally discharged on
February 10, 2012, "under other than honorable conditions," as
reflected in his Form DD‑214.[3] All three plaintiffs applied for
benefits under the Bonus Law. The Board denied the plaintiffs' applications
because the plaintiffs' Form DD‑214s stated that they were discharged
"under other than honorable conditions." The Board concluded that to
receive benefits under the Bonus Law, a veteran must demonstrate service
"under honorable conditions"; that where the military has issued a
Form DD‑214, the description provided in the "character of service"
section is dispositive for purposes of providing any benefits under the Bonus Law;[4]
that the "character of service" designation applies to whatever
period of service is printed in the "Record of Service" section of
the form; and that the characterization in "character of service" box
supersedes any prior characterizations made by the military during the period
of service reflected in the "Record of Service." In support, the
Board cites to Department of Defense Instruction 1332.14, Enclosure 4, ' 3(b)(3), which states that
"characterization will be determined solely by the enlisted Service
member's military record during the current enlistment or period of service to
which the separation pertains" (emphasis added). Despite this language,
the Board determined that "the period of service to which the separation
pertains" is that entire period listed in the   ---------------------------   [3]Under the Department of Defense
Instruction 1336.01, Enclosure 3, '
3(j) (Aug. 20, 2009) and Army Regulations 635‑8 '
5‑6(r)(4)(b) (Feb. 10, 2014) cited above, Santos' Form DD‑214 correctly lists
his continuous honorable active service as being from September 15, 2004 to
October 8, 2007. Machado's Form DD‑214 fails to note the period of his honorable
service. Espinosa's Form DD‑214 states an incorrect "until" date for
his continuous honorable service.   [4]The Board cites Department of
Defense Instruction 1336.01, '
4.3(f), which states that Form‑DD 214 is the "authoritative source of
information required for the administration of State and Federal laws
applicable to personnel who have been discharged."   -7-   "Record of Service" section of Form DD 214, and
that therefore the military had characterized the entirety of plaintiffs'
service, including any reenlistment terms, as "other than honorable."
Based on this, the Board concluded that the plaintiffs' earlier honorable
discharges were not relevant for purposes of determining whether the plaintiffs
were entitled to benefits under the Bonus Law. The adjutant general played no role
in making these determinations. DISCUSSION The Court may set aside a state
agency's decision only on the grounds enumerated in G.L. c. 30A, ' 14. See Howard Johnson Co. v.
Alcoholic Beverages Control Comm'n, 24 Mass. App. Ct. 487, 490 (1987). The
Court thus reviews the decision to determine whether it was not supported by
substantial evidence, was arbitrary or capricious, or was based on an error of
law. G.L. c. 30A, ' 14(7);
see also, ex., The Local Citizen Group v. New England Wind, LLC, 457 Mass. 222,
228 (2010). A moving party bears a heavy burden of establishing that an
agency's decision is invalid. See Merisme v. Board of Appeals on Motor Vehicle
Policies and Bonds, 27 Mass. App. Ct. 470, 474 (1989); Mass. Ass'n of Minority
Law Enforcement Officers v. Abban, 434 Mass. 256, 263‑64 (2001). In is review,
the Court gives due weight to the "experience, technical competence, and
specialized knowledge of the agency" and the discretionary authority
conferred upon it, see G. L. c. 30A, '
14(7), and will not substitute its judgment for that of the agency. Southern
Worcester Cnty. Reg'l Coy. Sch. Dist. v. Labor Relations Comm'n, 386 Mass. 414,
420‑21 (1982). As to issues of law, the Court
"grant[s] deference to the interpretations administrative agencies make of
the statutory scheme that they administer, "but "generally review[s]
an agency's interpretation of law de novo." Trustees of Health &
Hosps. of the City of Boston. Inc.   -8-   v. Massachusetts Comm'n Against Discrimination, 65 Mass.
App. Ct. 329, 333 (2005) (citations omitted), aff=d
sub nom. Trustees of Health & Hosps. of City of Boston, Inc. v.
Massachusetts  Comm'n Against
Discrimination, 449 Mass. 675 (2007); see also Buchanan v. Contributory
Ret.  Appeal Bd., 65 Mass. App. Ct. 244,
246 (2005) (citations omitted). The applicable principle is one of deference,
not abdication, and the Court may overrule an agency's interpretation of the
law when it is contrary to the plain language of a statute and its underlying
purpose. Leopoldstadt, Inc. v. Commissioner of Div. of Health Care Finance and
Policy, 436 Mass. 80, 91 (2002), citing Protective Life Ins. Co. v. Sullivan,
425 Mass. 615, 618 (1997); see also Goldberg v. Board of Health, 444 Mass. 627,
633 (2005); Town of Wakefield v. Labor Relations Comm'n, 45 Mass App. Ct. 630,
633 (1998). The primary issues in this case
concern the Board's determinations that (1) the "character of
service" designation on Form DD‑214 supersedes any prior characterizations
made by the military, such as honorable discharges; and (2) if the service
member has Form DD‑214, the Board will consider only that form when determining
whether a service member was honorably discharged and therefore eligible for a
bonus. The core factual claims are not
disputed. Each plaintiff served one or more enlistments that appear to qualify
each plaintiff for benefits under the Bonus Law. At the end of at least one
such enlistment, each plaintiff was, under military procedure, honorably
discharged, but immediately re‑enlisted. No DD‑214 was issued following these
discharges. None of the plaintiffs applied for bonuses at the time, largely C and critically C
because they were overseas, and perhaps in the midst of a combat tour, when
they re‑enlisted. After one or more further enlistments, each plaintiff was
less than honorably discharged from their final enlistment with the military,
and then applied for benefits. For instance, Espinosa was honorably discharged
in   -9-   December 2008 and December 2015 from evidently bonus‑qualifying
enlistments for which he applied, immediately re‑enlisted, and was finally
discharged on less than honorable terms in 2016, after a final enlistment.
Despite the apparent, prior bonus‑qualifying enlistments from which Espinosa
was honorably discharged, the Board denied all benefits for all enlistments. The Board argues that because the
plaintiffs were less than honorably discharged at the end of their final
enlistment, they are ineligible under the Bonus Law for any benefits for any
prior enlistment. The Board asserts that this Court must defer to its judgment
that it only considers the DD‑214, and to the Board's interpretation of it, as
the final word on whether a serviceperson was honorably discharged, and since
the DD‑214's reflects a less than honorable discharge, the plaintiffs are
ineligible for any bonus benefits arising from any enlistment. The Board's
position is in error, for at least three reasons. First, the Board's all‑or‑nothing
approach to benefits under the Bonus Law C
that a service member who has served a qualifying tour of duty in combat or
otherwise cannot receive any benefits for any prior enlistment if he or she was
dishonorably discharged at the end of the last one C
is not found in the statute, but rather conflicts with it. St. 2005, c. 130, ' 16 as amended by St. 2005, c. 167, ' 4, provides benefits if three
conditions are met: that the applicant (1) served in one of the named
operations; (2) was domiciled in Massachusetts for at least six months before
entry into service; and (3) was "discharged or released under honorable
conditions for such service." "Such service" is not defined, but
the Bonus Law on its face authorizes bonuses for service during one of the
named military operations from which a service member was honorably discharged.
Further, in 2011, the Legislature amended the Bonus Law to make it clear that
the Legislature intended that each enlistment be considered as a separate
qualifying event under the Bonus Law. That statute, St. 2011, c. 171, ' 3, states that a service member who   -10-   is eligible to receive benefits
under [the law] may receive such benefits; provided, however, that an eligible
resident shall receive the full bonus allowed by said [law] upon return after
his first deployment to the [qualifying military operation]. ... He shall
thereafter receive 50 per cent of the bonus ... after each subsequent return
from deployment to the [qualifying military operation]. St. 2011, c. 171, '
3 (emphasis added). The Legislature provided for varying levels of payments per
deployment C full
benefits upon return from the first deployment and half‑benefits "after
each subsequent return from deployment" C
and thus plainly intended that the Board apply the Bonus law on a per‑enlistment
basis, and not a per‑career basis. The Board's interpretation of the Bonus Law
to prohibit payment for a deployment that ended in honorable discharge simply
because the final deployment ended in a less‑than‑honorable discharge conflicts
with this direction. This is particularly so considering nothing in the Bonus
Law requires a service member to apply for the Bonus immediately upon an
honorable discharge from an enlistment C
and here, doing so was impossible for the plaintiffs because each was still
serving the country as service members overseas. Further, the Board's argument
that the benefits are only payable "upon application" does not make
the final determination of veteran's status in the DD‑214 determinative, even
were the Board's interpretation of the DD‑214 correct. That language simply
means that a veteran [5] must apply to get benefits, but it does not prohibit
him or her from arguing that earlier enlistments qualify for payment of
benefits under the statute. If it meant what the Board claims, then a military
person who enlists while overseas faces a hurdle in having to apply for
benefits as soon as the enlistment ends to protect his/her interests, a requirement
not   ---------------------------   [5]The Board also erroneously
argued that the term "veteran" as used in the Bonus Law should be
defined as it is under G.L. c. 4, '7,
clause 43, which requires an honorable discharge. The Bonus Law provides
benefits to "each person who shall have served in the armed forces of the
United States in active service as part of part of Operation Enduring Freedom,
Operation Iraqi Freedom, Operation Noble Eagle, Operation Inherent Resolve,
Operation Freedom Sentinel or any successor or related operation." Its
subsequent use of the phase 'such veteran" refers to these individuals.
"Veteran" under G.L. c. 4, '7,
clause 43, means service member who provided "wartime service,"
defined to include service during other conflicts C
but not those operations identified in the Bonus Law. The Board's reading,
then, would eviscerate the Bonus Law.   -11-   found in the statute. That erroneous reading would yield
unjust results. A service member who is discharged from an enlistment and
returns home from a combat duty could apply for and receive benefits, even if
he or she later re‑enlists and is subsequently less than honorably discharged.
By contrast, a service member C
like the plaintiffs here C
who are discharged while serving in a hostile environment but remain in that
environment and immediately re‑enlist, and who therefore delays applying for
benefits for the just‑completed enlistment, lose the opportunity to ever
receive benefits for that qualifying enlistment if they are later less than
honorably discharged. The Bonus Law was designed to reward service to the
country. The Board's reading would penalize such service for military members
who voluntarily remain in combat, a result at odds with the Legislature's
intent. Second, the Board's determination
that the DD‑214, and the Board's interpretation of it, is final also conflicts
with the Bonus Law. The Bonus Law expressly states that the DD‑214 "or
equivalent documentation as determined by the adjutant general" is to be
provided to the adjutant general in determining eligibility, and that it is the
adjutant general, and not the Board, who is authorized under the Bonus Law to
certify relevant military information to the Board. See St. 2005, c. 167, ' 4 ("adjutant general shall
certify to the state treasurer the dates of service and any other military
information necessary to carry out the provisions of this act."). The DD‑214
is therefore not the final word on eligibility for benefits under the Bonus
Law, and in these cases, the adjutant general made no certification as to any
of the military information on which the Board relied. When asked about this
provision of law at argument, counsel for the Board argued that Court should
"ignore" the law. It is highly inappropriate for any lawyer, much
less the Attorney General, to suggest a Court to ignore the law. It is fatal
when a state agency takes such a position. The Board's position on this point
was also arbitrary and capricious. In its brief and   -12-   in its decision in Machado's case, the Board recognized that
there would be no DD‑214 when a service member was discharged and then re‑enlisted,
but such a person could still apply for benefits without this supposedly‑necessary
and determinative document. See Memorandum, at 15‑16, n. 15; AR, at 297, 299.
The Board's concession that other military forms can substitute for the DD‑214
demonstrates that insistence on that form in these cases was arbitrary and
capricious. For all of these reasons, the Board erred as a matter of law when
it determined, on its own, that it would rely solely on the DD‑214 and its own
reading of it. Third, the Commonwealth's
interpretation of the DD‑214 is not supported by federal regulations that
describe that form, which further reflects the arbitrariness and capriciousness
of the Board's view. Department of Defense Instruction 1332.14, Enclosure 4 ' 3(b)(3) states that the "under
other than honorable conditions" characterization "will be determined
solely by the enlisted Service member's military record during the current
enlistment or period of service to which the separation pertains"
(emphasis added). This instruction does not say that the characterization
applies to all service performed by the service member during all enlistments C and the facts here plainly show it
does not characterize those prior discharges. Based on the foregoing, the Board's
interpretation of the Bonus Law is erroneous as a matter of law, arbitrary and
capricious. The Court thus allows the plaintiffs' motions for judgment on the
pleadings and denies the Board's cross‑motions, and remands these matters to
the Board for reconsideration in light of these determinations. The Court
declines to address the constitutional questions raised by plaintiffs in their
motions for summary judgment, as its determination under the Bonus Law provides
the necessary answers. See e4., SCVNGR, Inc. v. 
Punchh. Inc., 478 Mass. 324, 330 (2017) ("[I]t is canonical that
courts should, where possible, avoid unnecessary constitutional
decisions."); Beeler v. Downey, 387 Mass. 609, 613 & n.4                                                         -13-   (1982) (court has duty to interpret statutes in manner that
avoids unnecessary decision of serious constitutional question). The Court
further declines to reach the class claims. Therefore, the Court denies the
plaintiffs' motions for summary judgment on those counts as moot. ORDER For the foregoing reasons, it is
hereby ORDERED: Docket No. 17, 17‑2056: Machado and
Espinosa's Motion for Judgment on the Pleadings as to Counts I and II of their
Amended Complaint is ALLOWED and their Motion for Summary Judgment as to Counts
III to VIII is DENIED AS MOOT; Docket No. 20, 17‑2056: Defendants'
Cross‑Motion for Judgment on the Pleadings as to Counts I and II of Machado and
Espinosa's Amended Complaint is DENIED; Docket No. 8, 18‑1310: Santos'
Motion for Judgment on the Pleadings as to Count I of his Complaint is ALLOWED,
and his Motion for Summary Judgment as to Counts II to VI is DENIED AS MOOT;
and No Docket Number, 18‑1310:
Defendants' Cross‑Motion for Judgment on the Pleadings as to Count I of Santos'
Complaint (no paper number) is DENIED. 
           The Court REMANDS these matters to
the Board for reconsideration in light of this decision. 
            This matter is hereby DISMISSED. 
             SO ORDERED. /s/MICHAEL D. RICCIUTI Associate Justice of the Superior
Court   December 21, 2018